UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| GEORGE W. WRIGHT, | ) | Civil No. 09-CV-554-L(WVG) |
| Plaintiff, | ) ) | REPORT AND RECOMMENDATION OF JUDGEMENT AMOUNT AGAINST BRIAN WOOD |
| v. | ) ) | |
| BRIAN WOOD ET AL., | ) ) | |
| Defendants. | ) ) | |

The Court recommends a judgment in the amount of $ 238,033.39 against Defendant Brian Wood.

Background

Plaintiff George Wright has sought default judgement against Defendant Brian Wood. Judge Lorenz issued a default judgment on Plaintiff's breach of contract claim and referred the matter to this Court for a prove up hearing. (Doc. No. 17.) As the District Court is well acquainted with the facts, only a brief summary will be provided herein.

Plaintiff seeks to recover at total of $1,628,033.39 in damages arising from the breach of contract. (Doc. No. 19, 7:7). Plaintiff bases his figures in three categories:

1.   Consultation Costs (Un-reimbursed Expenses)-   $   13,033.39;
2.   Consulting Fees (10 months unpaid @ $2,500/m) -   $   25,000.00; and

3.      50% of Shares in EV Stock (750,000 shares at $2.12)-$ 1,590,000.00.

To support the consultation costs, Plaintiff submitted receipts detailing business expenses. Plaintiff supports his claim for ten months of unpaid consultation fees in the oral contract he had with Defendant Wood. In July 2008, Defendant Auto Acquisitions Inc. ("AAI") was purchased by Environmental Transportation Inc.'s ("EV") in a reverse merger transaction. Plaintiff estimates his damages at $1,590,000.00 which represents the value of Plaintiff's alleged 50% interest of 1.5 million shares of EV stock purportedly issued to Defendant Wood and AAI as of September 3, 2008.

The Court convened a prove-up hearing on January 14, 2010. Appearing at the hearing was Plaintiff George Wright and his counsel, Steven Potter and Jonathan Boynton. Neither Defendants Wood or AAI nor their counsel appeared. At the hearing, Plaintiff was placed under oath, and submitted additional testimony to supplement the documents he previously submitted to the Court. The Court finds Plaintiff's testimony credible and, because of the absence of any defendant at the hearing, mostly uncontradicted. At the conclusion of the hearing, Plaintiff was ordered to submit supplemental evidence of his damages resulting from the stock transfer between himself and Defendant Wood. At the Court's direction, Plaintiff submitted additional documents February 4, 2010 and April 2, 2010. The Court has reviewed the evidence, and accordingly recommends that Plaintiff is entitled to a judgment of $238,033.39 arising out of Defendant Wood's breach of contract with Plaintiff.

Discussion

I. Unreimbursed Expenses

Plaintiff submitted numerous receipts and credit card statements documenting unpaid expenses, spent in furtherance of the business venture. Plaintiff was questioned under oath about each receipt, the purpose of the expenditure, and asked to verify that Plaintiff spent the money noted for a business purpose and not a personal expense. (Transcript, 34:18 - 57:10.) Plaintiff provided receipts for the years of 2005 - 2008. Plaintiff explained the various client development expenditures and documented his business related reasons for traveling to cities like Las Vegas and Chicago. (See Doc. No. 19, Exhibits 1-18.)

///

Court Findings

The Court concludes that Plaintiff sufficiently documented and explained the legitimate business purposes behind the expenses detailed below, for a total due to Plaintiff of $13,033.39 of unreimbursed business expenses.

- $ 440.16 at Hertz Rent-A-Car (Doc. No. 19, Ex. 1)
- $1,377.97 for lodging (Doc. No. 19, Ex. 1)
- $288.30 on airfare (Doc. No. 19, Ex. 1)
- $148.73 on lodging (Doc. No. 19, Ex. 1)
- $129.43 at Hertz Rent-A-Car (Doc. No. 19, Ex. 1)
- $595.54 at Bally's in Las Vegas (Doc. No. 19, Ex. 2)
- $520.00 on golfing in Las Vegas (Doc. No. 19, Ex. 3 -4)
- $339.26 at Hertz Rent-A-Car (Doc. No. 19, Ex. 5)
- $65.00 on airport parking (Doc. No. 19, Ex. 6)
- $239.80 at Caesars Hotel in Las Vegas (Doc. No. 19, Ex. 7,9)
- $307.60 on airfare (Doc. No. 19, Ex. 7,9)
- $177 on airfare (Doc. No. 19, Ex. 7,9)
- $75 for a meeting room (Doc. No. 19, Ex. 8)
- $600.60 for airfare (Doc. No. 9)
- $107.55 for Hertz Rent-A-Car (Doc. No. 19, Ex. 9)
- $379.40 for airfare (Doc. No. 19, Ex. 9)
- $176.62 for Hertz Rent-A-Car (Doc. No. 19, Ex. 9)
- $430.80 for lodging (Doc. No. 19, Ex. 9)
- $799.00 for airfare (Doc. No. 19, Ex. 10)
- $152.00 on airfare (Doc. No. 19, Ex. 10)
- $542.00 on airfare (Doc. No. 19, Ex. 10)
- $827.80 for airfare (Doc. No. 19, Ex. 11)
- $205.00 for airfare (Doc. No. 19, Ex. 11)
- $388.24 on lodging (Doc. No. 19, Ex. 11)

- $12.45 for meal (Doc. No. 19, Ex. 11)
- $286.00 for lodging (Doc. No. 19, Ex. 12)
- $382.00 for airfare (Doc. No. 19, Ex. 13)
- $710.66 for lodging (Doc. No. 19, Ex. 14)
- $460.00 for airfare (Doc. No. 19, Ex. 15)
- $98.93 for Hertz Rent-A-Car (Doc. No. 19, Ex. 16)
- $469.50 for airfare (Doc. No. 19, Ex. 17)
- $350.95 for Budget Rent-A-Car (Doc. No. 19, Ex. 18)

## II. Consulting Fees

Plaintiff seeks $25,000 of unpaid fees, at $2,500 monthly for ten months, from the period of November of 2006 through August 2007. Prior to this time period, Plaintiff represented that he received consulting fees from Defendant Wood from March 2005 to November of 2006. (Transcript, 22:12 - 14.) Plaintiff received personal checks, either hand delivered by Defendant Wood or mailed to Plaintiff. Plaintiff noted further that it was possible Defendant Wood's "wife may have signed a check or two in that time frame. [As i]t's the same account" that Mr. and Mrs. Wood share. (Transcript, 23:9-10.) However, the "majority was Brian Wood the signer." (Transcript, 23:16-17.) At times, Plaintiff was paid "two or three times [with] a money order." (Transcript, 23:20-24.) He never received a check from the Defendant AAI. (Transcript, 22:20-25; 24:7-8.)

Plaintiff represented that October 2006 was the last check he received. (Transcript, 28:2.) When the check failed to arrive in November 2006, Plaintiff sought reassurance from Defendant Wood. Plaintiff explained that Defendant Wood said "You'll get paid. I'll get to it. ... You're going to make so much money off what we're doing [with the stock transfer] that it will be insignificant what I owe you." (Transcript, 27:8-12.) When asked if Defendant Wood ever attributed the tardy consulting fee payments on the corporation's (i.e. AAI) cash flow, Plaintiff responded, "Never." (Transcript, 27:23.) Plaintiff's counsel confirmed, not under oath, that August 2007 is the end date for owed compensation because that was the time the reverse merger was occurring whereby EV was purchasing AAI. (Transcript, 19:19 - 20:1.)

Plaintiff explained further that his right to a $2,500 payment was not contingent upon

working a set or certain amount of hours per month, or traveling to locations. The money was due to him regardless of effort or work expended in any given month. (Transcript, 31:24 - 32:16.) He explained that the business model was "relationship driven ... [and it was] not just [Plaintiff's] expertise but ... relationships that were going to make that [model] happen, and it was Mr. Wood that was going to be driving the financial partner infrastructure." (Transcript, 31: 16, 20-23.)

When questioned on why only an oral agreement between Plaintiff and Defendant Wood exists, Plaintiff sheepishly admitted that he "did have attempts [to put the agreement in writing] ... [and] wanted more structure to the agreement... and attempted as an individual... and with [his] attorney to get Brian Wood to commit to exactly what the end game could be, ... but ... Brian Wood['s] ... strategy [was to]... take advantage of [his] contributions and everything in regard to equity sale." (Transcript, 33:24- 34:5.)

Court Findings

The Court finds that Defendant Wood and Plaintiff had an oral agreement in which Plaintiff was to receive $2,500 a month, without limitation by actual work performed. The evidence demonstrates that Plaintiff worked for Defendant Wood in Wood's personal capacity and not Defendant AAI. Except when issued an occasional cashier's check or money order, Defendant Wood paid Plaintiff with checks written on a personal account, not the business account of Defendant AAI. The Court concurs in Plaintiff's calculation that Defendant Wood owes him $25,000 in consulting fees.

III. Stock Interest in EV Transportation

Plaintiff seeks to recover $1,590,000.00 based on the dollar value of Plaintiff's 50% interest in EV stock as of September 3, 2008. In his complaint, Plaintiff states that "[d]uring the relevant time period, the per share price has ranged from $1.25 to $2.20 per share." (Complaint at 5, ¶36.) The complaint acknowledges that the total number of shares Defendant Wood received as a result of the merger of AAI and certain business partners is somewhat speculative:

- In 2007, AAI entered into negotiations with entities known as TC X Calibur, IMMS, Inc., EVRAC, LLC and EV Transportation, Inc. (collectively the "Business Partners") to merge the business. . . .

1     •     *Upon information and belief*, in or around the summer of 2008, one or more of the
2             Business Partners merged with AAI. . . .
3     •     As part of this transaction, AAI and/or Wood *received no less* than one million five
4             hundred thousand shares (1,500,000) shares of EV. (Complaint at 4, ¶¶ 20-22)(emphasis
5             added.)

6 In support of his claim for the stock shares, Plaintiff submitted a press release of the merger, (Doc. No. 19, Ex. 20), a copy of the business plan, (Doc. No. 19, Ex. 21), a copy of the investor presentation of EV Rental Cars, (Doc. No. 19, Ex. 22), EV's 8k SEC filing, (Doc. No. 19, Ex. 23), an email from Plaintiff to Defendant Wood demanding his shares, (Doc. No. 19, Ex. 24 & 26), and a statement of EV's stock share price between August 29, 2008, through October 1, 2008 (Doc. No. 19, Ex. 25). Plaintiff further submitted sworn testimony at the prove up hearing. After request from the Court, Plaintiff submitted additional exhibits such as email chains regarding discussions about the shares (Doc. No. 22, Exs. 1-9, 11 -13), and the EV Warrant to Purchase Stock (Doc. No. 22, Ex. 10). After a second supplemental request from the Court, Plaintiff submitted a sworn declaration, an EV Rental Cars equity interest statement, and more demand letters from Plaintiff Wright's attorney.

The EV stock calculation presents two issues for the Court to determine in order to recommend a damages figure regarding EV stock. First, under the oral contract with Defendant Wood was Plaintiff entitled to any shares of EV stock? If so, how many? Second, if entitled, at what price should those shares be valued?

i. Transfer

Plaintiff Wright submitted various demand letters and email requests documenting his alleged entitlement to shares of EV stock. The Court notes that in an email from Defendant Wood to David S. Cooper, dated October 5, 2008, EV stock shares were apparently allotted for receipt by Defendant Wood. (Doc. No. 19, Ex. 24.) Plaintiff confirms that Defendant Wood orally confirmed receipt of these shares. (Doc. No. 25, Declaration of Plaintiff.)  However, while the email from Defendant Wood to David Cooper indicates that 1.5 million shares were to be dispersed, the total shares were to be apportioned between Defendant Wood and twelve other investors. (Doc. No. 19, Ex. 24.) The email notes that Defendant Wood was only to receive 800,000 shares, and of that

800,000 shares, Plaintiff was to receive 100,000 shares (Doc. No. 19, Ex. 24), far from the 750,000 shares Plaintiff states he was to receive. Plaintiff's counsel responded that Plaintiff never agreed to this figure of 100,000 shares. (Transcript, 66:2-12.) Other than Plaintiff's testimony that Defendant Wood promised to transfer 750,000 shares of EV stock, Plaintiff offered no documentary evidence nor other witnesses to support his claim.

Court Findings

Despite the October 5, 2008 email, Plaintiff maintains that defendant Wood received 1.5 million EV shares. Plaintiff suggests that the twelve investors did not receive any of the 700,000 shares described in the email and that Defendant Wood both received and kept all 1.5 million shares. However, other than Plaintiff's conjecture and alleged "inside industry information," Plaintiff presents absolutely no evidence to support this suspicion. Even if the Court was inclined to find that Plaintiff was entitled to 50% of Defendant Wood's EV stock acquisition, the Court would not use 1.5 million shares as the basis for that calculation.

The October 5, 2008, email from Defendant Wood to David Cooper directly contradicts both the amount of shares Defendant Wood received, and Plaintiff's portion of the shares. Despite Plaintiff's credibility in his claim for damages regarding unreimbursed business expenses and consulting fees, Plaintiff has failed to meet the rather minimal burden in proving up these damages relating to the stock transfer. The Court is reluctant to recommend that Plaintiff is entitled to the value of 750,000 shares of EV stock, absent any written evidence, especially in light of contradicting documentary evidence.

No corroborating evidence of entitlement to 750,000 shares of EV stock has been submitted to the court. The written documentation submitted supports the conclusion that Defendant Wood had at least contemplated transferring to Plaintiff only 100,000 EV shares. Plaintiff has had three opportunities to support his claim to the EV shares, but has produced nothing to substantiate an entitlement to 750,000 shares. The Court is satisfied that this email evidences Defendant Wood's agreement to transfer 100,000 shares of EV stock to Plaintiff. Accordingly, the Court recommends that Plaintiff is entitled to the value of 100,000 shares of EV stock. Given Plaintiff's entitlement, the Court next addresses the value of the shares Plaintiff was to receive.

ii. Valuation

When questioned about why Plaintiff is entitled to the requested $2.12 a share Plaintiff's counsel responded that "the demand was made on August 21st of 2008, and ... the stock began trading publicly a week thereafter. ... A snapshot of what the share price was from the time it started trading through September" 2008 details a midpoint of $2.12, ranging from $2.20 to $1.30. (Transcript, 62:16-21, 16:3., Doc. No. 19, Exs. 25 -26.) Plaintiff's counsel further detailed that inside industry information caused Plaintiff to believe that Defendant Wood sold all the shares of EV stock on the private market. (Transcript, 63:7-9, 13-16, 18.) Plaintiff testified that he believed that "the public [company] shell people ... offered [Mr. Wood] two dollars a share for all of his shares, and at that time he said mine too, my half of the equation. So [he] believe[s] that [Mr. Wood] cashed out from the private people." (Transcript, 64:15 - 65:3.) The Court noted that the current share price is "next to nothing." (Transcript, 63:25.) That comment remained unaddressed.

Plaintiff has described the efforts he has taken to ascertain the number of shares Defendant Wood received and the price and date at which he sold them, if sold at all. Despite diligent efforts, Plaintiff has come up empty handed. If it is true, as Plaintiff believes, that Defendant Wood in fact received all 1.5 million shares and sold any or all of them, the price he obtained would have been the best evidence to determine a per share price in calculating Plaintiff's damages. Not having this information however, does not imply that the Court is without sufficiently reliable evidence to perform its own calculation. Plaintiff provided the Court with the trading prices of EV stock for the period commensurate with the time in August and September 2008, when Plaintiff demanded his shares from Defendant Wood. (See Doc. No. 19, Ex. 25, Doc. No. 25, Ex. 2-3.)

Plaintiff testified that his "intent was to take [his] 750,000 shares and sell them immediately at two dollars a share at the end of August [2008]." (Transcript, 6:15-17.) Comparing Plaintiff's stated intent against the August 29, 2008, selling price of EV stock of $2.20, the Court concludes Plaintiff's asking price was reasonable. (See Doc. No. 19, Ex. 25.) Furthermore, if Plaintiff intended to offer his shares (whether it be 100,000 or 750,000 shares) at below market price, it is the Court's opinion that he would have been more likely to sell them quickly at his asking price.

Plaintiff has requested the Court to use $2.12 per share as the basis for calculating

damages. This $2.12 figure reflects the price of one share of EV stock on September 3 through 11, 2008. (Doc. No. 19, Ex. 25.) Incidentally, the stock price began to fall on September 12, 2008, and continued to plummet until the present date. The stock currently is practically worthless. As Plaintiff's counsel acknowledged, "there was no science to ... utilizing that September date." (Transcript, 62:22.) There is contradicting evidence that despite Plaintiff's demand in August 2008, the shares still had not been distributed to Defendant Wood by October 5, 2008. The October 5, 2008 email between Defendant Wood and David Cooper, indicates that the share apportionment between Defendant Wood and twelve others is a "proposal" and will be presented to the "investor group for vote." (Doc. No. 19, Ex. 24.) This tentative language suggests that the 1,500,000 shares of EV stock had not yet been distributed to any of the entitled individuals as of October 2008. Nonetheless, while the email can be interpreted to suggest that Plaintiff would not have received his shares in August or even September of 2008, it is by no means definitive.

Court Findings

It is not unreasonable to conclude that if Defendant Wood had transferred the shares to which Plaintiff was entitled, assuming Defendant Wood had them to transfer, Plaintiff immediately would have sold his shares. Without any opposing evidence presented by Defendant Wood, the Court finds Plaintiff has met his burden in establishing entitlement to the value of 100,000 shares. However, Court rejects Plaintiff's contention the shares be valued at $2.12 per share. Rather the Court accepts Plaintiff's stated intention that he was going to sell them at $2.00 a share. It is this lower figure the Court will use in assessing damages. Accordingly, 100,000 shares at $2.00 per share totals $200,000 in damages.

## Conclusion & Recommendation

The Court has reviewed the evidence, and accordingly finds that Plaintiff is entitled to $13,033.39 in unreimbursed expenses; $25,000 in unpaid consultation fees; and entitlement to 100,000 shares of EV stock, valued at $2.00 a share. In total, the Court recommends that based on credible evidence, comprised of written documents and oral testimony, a judgment of $238,033.39 be entered against Defendant Brian Wood for breaching an oral contract with Plaintiff.

1       This report and recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provision of 28 U.S.C. § 636(b)(1).

      **IT IS ORDERED** that no later than April 22, 2010, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

      **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than April 29, 2010. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: April 12, 2010

                                                Hon. William V. Gallo
                                                U.S. Magistrate Judge